**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No.  09-cv-02614-REB-KLM

WILLIAM I. DALZELL,
DEVON C. PURDY,
SAM PROPERTIES V, LLC, a Colorado limited liability company,
GREGORY HALLER,
PAMELA HALLER,
CINDY ROGERS, and
RONALD KOLLIGIAN,

      Plaintiffs,

v.

TRAILHEAD LODGE AT WILDHORSE MEADOWS, LLC, a Colorado limited liability company,
S&P DESTINATION PROPERTIES, INC., a Delaware corporation, and
RP STEAMBOAT SPRINGS, LLC a Delaware limited liability company,

      Defendants.

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW,  AND ORDER**

---

**Blackburn, J.**

      On December 9, 2010, the court approved the stipulation [#119][1] of the parties to

submit this case to the court on written briefs and supporting affidavits, in lieu of trial to

the court.  The plaintiffs and the defendants then submitted opening briefs [#124 &

#125] followed by response briefs [#129 & #130].  Included with the plaintiffs' opening

brief [#124] is a statement of facts to which the parties have stipulated.  In addition, the

plaintiffs' opening brief [#124] includes several exhibits submitted jointly by the parties.

---

      [1]  "[#119]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

Additional exhibits are included with the parties' briefs.

Having judicially noticed all relevant adjudicative facts in the file and record of this case *pro tanto*; having considered the evidence educed in its various forms; having determined, to the extent necessary, the credibility of the witnesses; having weighed the evidence; having considered the reasons stated, arguments advanced, and the authorities cited by the parties; and being otherwise sufficiently advised of the facts and premises, I enter the following findings of fact, conclusions of law, and orders.[2]  All findings of fact are based on my conclusion that those facts have been proven by a preponderance of the evidence.

## I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

## II.  BACKGROUND

On July 25, 2007, the plaintiffs signed pre-construction purchase and sale agreements (the Contracts).  In all respects material to this case, the Contracts are identical.  The plaintiffs each agreed to buy a condominium unit from defendant Trailhead Lodge at Wildhorse Meadows, LLC (Trailhead LLC).  Trailhead LLC agreed to build the units within two years.

The Contracts did not comply with certain requirements of the Interstate Land Sales Full Disclosure Act (ILSA), 15 U.S.C. § 1701 - 1720.  The ILSA prohibits the sale or lease of lots in a subdivision using any means of interstate commerce, unless the lots are exempt from the ILSA or the seller furnishes the buyer with a "property report" prior

---

[2]  I state my findings of fact specifically and conclusions of law separately as required by Fed. R. Civ. P. 52(a)(1).  Any finding of fact more properly deemed a conclusion of law, or any conclusion of law more properly deemed a finding of fact, shall be as more properly characterized.

to execution of a purchase agreement and includes certain terms in the agreement. 15 U.S.C. § 1703.  In addition, under § 1703 the seller must file a statement of record concerning the property.  In an order [#103] addressing previous motions for summary judgment, I concluded that the Contracts are not exempt from the requirements of the ILSA.  *Order Granting Motions for Summary Judgment* [#103] field November 30, 2010. In addition, I concluded that Trailhead LLC is liable to the plaintiffs on their first, second, and third claims for relief, all claims under the ILSA.  The issue of damages or other relief was not resolved in my summary judgment order.  In addition, I did not resolve the question of whether defendant RP Steamboat Springs LLC is liable under the ILSA.

Subsequently, the parties stipulated to the dismissal, without prejudice, of the plaintiffs' state law claims against the defendants, and I approved the stipulation. *Stipulation* [#111] filed December 2, 2010; *Order* [#118] filed December 6, 2010. Pursuant to the stipulation, I dismissed the plaintiffs' fourth through seventh claims for relief as stated in the plaintiffs' **Second Amended Complaint** [#70] filed July 26, 2010.

A short time later, plaintiffs William Dalzell, Devon C. Purdy, Gregory and Pamela Haller, and Ronald Kolligian stipulated with defendant Trailhead LLC to the entry of judgment against Trailhead LLC on the first, second, and third claims for relief, including specific amounts of damages as to each of these plaintiffs and concomitant claims.  The parties stipulated also to a judgment rescinding the relevant contracts. *Stipulation* [#121] filed December 2, 2010.  Trailhead LLC reserves the right to appeal the underlying finding that it is liable under the ILSA.

In the **Final Pre Trial Order** [#117] filed December 2, 2010, the parties designate the plaintiffs' first, second, and fifth claims for relief as the claims on which some issues remain pending. *Final Pre Trial Order* [#117], pp. 3-4.  However, the designation of the

fifth claim for relief as still pending apparently is an error.  The fifth claim for relief was dismissed via the earlier stipulation [#111] and order [#118].  Technically, the third claim for relief remained pending against defendant RP when the **Final Pre Trial Order** [#117] was filed.

The three remaining claims may be summarized as follows.  In their first claim for relief, the plaintiffs allege the defendants violated the ILSA in certain ways.  On this claim, the remaining issues include: (a) whether defendant RP Steamboat Springs LLC is liable for the violations of the ILSA; and (b) what, if any, damages or other remedies are available to plaintiffs SAM Properties V, LLC (SAM) and Cindy Rogers on their ILSA claims.  *Final Pretrial Order* [#117], p. 4.  Among other things, SAM and Ms. Rogers seek damages and rescission of their contracts.  Trailhead argues that neither damages nor rescission are remedies available to SAM and Ms. Rogers.  *Id.*

In their second claim for relief, the plaintiffs seek a judgment declaring that the defendants violated the ILSA when contracting with the plaintiffs for the sale of Trailhead Lodge condominium units.  The same issues remain pending as to the second claim for relief as are pending concerning the first claim for relief.

In the third claim for relief, plaintiffs William Dalzell, Devon C. Purdy, Gregory and Pamela Haller, and Ronald Kolligian seek a judgment declaring that their revocations of their contracts with Trailhead LLC are valid.  This claim was resolved as to defendant Trailhead LLC via the parties' stipulation [#121].  Technically, this claim remains pending only as to defendant RP Steamboat Springs LLC (RP).

Finally, Trailhead LLC asserts against defendants SAM and Ms. Rogers a counterclaim for breach of contract.  *Final Pretrial Order* [#117], pp. 7-8.  SAM and Ms. Rogers assert affirmative defenses to this counterclaim.  *Id.*, pp. 4-5.

The briefs currently before the court address these remaining issues.  First, I must determine if defendant RP Steamboat Springs LLC is liable to the plaintiffs based on Trailhead LLC's violations of the ILSA.  RP argues that it is not subject to any liability under § 1703 (a)(1)(A) and (B) because it did not sell or lease Trailhead units to the plaintiffs.  The plaintiffs argue that RP sold Trailhead units indirectly and is liable as an indirect seller under § 1703 (a)(1)(A) and (B).  Second, I must determine if plaintiffs SAM and  Cindy Rogers properly can revoke their contracts, under § 1703(c), or if they otherwise are entitled to revocation of their contracts, damages, or both, as forms of relief in this case.  Finally, I must resolve Trailhead LLC's counterclaim against SAM and Ms. Rogers.

### III.  FINDINGS OF FACT

The parties have stipulated to many relevant facts.  **Stipulated Facts** [#124], pp. 1-5.  In addition, the parties have submitted affidavits and exhibits in support of their arguments addressing the issues remaining in this case.  To the extent my findings of fact are not based on the parties' stipulated facts, I cite below the evidence in the record that supports particular findings of fact.

### A.  RP STEAMBOAT SPRINGS, LLC & THE WILDHORSE MEADOWS DEVELOPMENT

Defendant RP Springs, LLC was formed in July 2005 for the purpose of developing the Wildhorse Meadows subdivision in Steamboat Springs, Colorado.  In July 2006, RP entered into a Development Agreement with the City of Steamboat Springs to develop a master-planned, common interest community, known as Wildhorse Meadows.  The Development Agreement contemplated that Wildhorse Meadows would consist of eight separate parcels to be developed in phases and projected to contain

approximately 500 residential units.  The plan called for five parcels with condominium buildings, two parcels with town homes, and one parcel with single family homes. Initially, RP owned all of the eight parcels in the Wildhorse Meadows development.

## B.  TRAILHEAD LLC

On March 22, 2007, defendant Trailhead Lodge at Wildhorse Meadows, LLC (Trailhead LLC) was formed.  Trailhead LLC had five members.  On July 27, 2007, RP transferred one of the eight parcels in the Wildhorse Meadows development to Trailhead LLC.  *Plaintiffs' Exhibit 9* (Special Warranty Deed) [#124-20].  This parcel was planned for the development and construction of Trailhead Lodge at Wildhorse Meadows (Trailhead Lodge), a condominium development.[3]

## C.  MANAGEMENT OF RP & TRAILHEAD LLC BY RESORT VENTURES WEST

Shortly after RP was formed in July 2005, RP hired Resort Ventures West, Inc. (Resort Ventures) as RP's management company.  *Affidavit of Brent Pearson* (Pearson Affidavit) [#125-2], ¶ 8.  Resort Ventures has no ownership interest in RP.  As RP's management company, Resort Ventures signed agreements and other documents on behalf of RP.  *Id.*, ¶ 11.  In these instances, Resort Ventures acted through David Hill or Brent Pearson, who signed documents as "authorized signatories," "Vice President" of RP, or "Manager."  *Id.*, ¶ 11.  Brent Pearson says he and David Hill "signed all documents for RP in our capacities as the principals of [Resort Ventures]."  *Id.*  When Trailhead LLC was formed, it also hired Resort Ventures as Trailhead LLC's management company.  *Plaintiffs' Exhibit 33* [#124-37] (Trailhead LLC Operating Agreement), p. 2.

---

[3] I will refer to this parcel as the Trailhead Parcel.

Brent Pearson, David Hill, and Mariana Ishida, as principals or employees of Resort Ventures, had authority to oversee and implement strategies and decisions made by RP and by Trailhead LLC.  *Second Affidavit of Brent Pearson* [#130-2] (Second Pearson Affidavit), ¶ 6.   Resort Ventures did not have the authority to set sales strategy or pricing for RP or Trailhead LLC.  *Id.*  As the management company for RP and Trailhead LLC, Resort Ventures had authority to approve "sales and marketing" for Wildhorse Meadows, The Range, and Trailhead Lodge.  *Id.*  Neither the management agreement between RP and Resort Ventures nor the management agreement between Trailhead LLC and Resort Ventures gave RP control over Trailhead LLC's sales policies or sales practices.

### D.  OWNERSHIP OF RP, TRAILHEAD LLC, & RESORT VENTURES WEST

RP's Ownership - During the time period relevant to this case, the ownership of RP was Rockpoint Real Estate Fund I, LP - 90 percent; and RVW/WHM Investors, LLC (RVW/WHM) - 10 percent.  *Pearson Affidavit* [#125-2], ¶ 4.  In turn, David and Amy Hill owned 16.7 percent of RVW/WHM, and Howl of the North, LLC owned 25 percent of RVW/WHM.  *Id.*, ¶ 5.  Brent Pearson owns 29 percent of Howl of the North, LLC.  *Id.* For RP, all "significant decisions were made by an executive committee comprised of four Rockpoint representatives and two RVW/WHM representatives."  *Id.*, ¶ 7.

Trailhead LLC's Ownership - During the time period relevant to this case, the ownership of Trailhead LLC was Daniel Posen - 44.5 percent; Wallace Whitley - 44.5 percent; Whitney and Vicky Ward - 5.5 percent; David and Amy Hill - 4.4 percent; Brent and Samantha Pearson - 1.1 percent.  *Pearson Affidavit* [#125-2], ¶ 24.

Resort Ventures West, Inc.'s Ownership - During the time period at issue in this

case, the ownership of Resort Ventures West, Inc. was Whitney Ward - 40 percent;
David Hill - 40 percent; and Brent Pearson - 20 percent.  *Pearson Affidavit.*, ¶ 9.

In short, both David Hill and Brent Pearson held ownership stakes in both RP
and in RP's management company, Resort Ventures.  In addition, David Hill and Brent
Pearson also held relatively small ownership stakes in Trailhead LLC.  A basic outline of
these entities and their ownership is shown in Defendants' Exhibit 1 [#125-3].
Generally, RP, Trailhead LLC, and Resort Ventures shared the same address and office
space.

### E.  MARKETING OF WILDHORSE MEADOWS & TRAILHEAD LODGE

On September 22, 2006, RP entered into an Exclusive Listing and Marketing
Agreement (Listing Agreement) with S & P Destination Properties, Inc. (S&P) for the
marketing of Wildhorse Meadows.  *Joint Exhibit 7* [#124-3] (Listing Agreement).  Under
the Listing Agreement, the marketing of each of the eight separate parcels in the
Wildhorse Meadows development would be governed by a separate Project Agreement.
In the event RP sold a parcel to a different developer, the Listing Agreement allowed RP
to assign its rights in that particular Project Agreement to the new owner of the parcel,
with certain limitations.  *Listing Agreement* [#124-3], ¶¶ 7.9, 14.12.

S&P prepared separate marketing plans for Wildhorse Meadows and for
Trailhead Lodge.  In the fall of 2006, S&P distributed marketing materials about
Wildhorse Meadows.  *Joint Exhibits 12-A - 12-C* [#124-5, #124-6, #124-11, #124-12].
Some of these marketing materials mention a condominium development and some
mention Trailhead Lodge by name. S&P placed an ad in the winter 2006/2007 edition of
Steamboat Magazine promoting Trailhead Lodge.  *Plaintiffs' Exhibit 30* [#124-34].  A

website promoting Wildhorse Meadows and, at some points, Trailhead Lodge, was launched in the Winter of 2006/2007.  *Plaintiffs' Exhibit 1* [#124-13] (Devon Dalzell Affidavit), ¶ 18.  Trailhead Lodge's marketing materials advertised that Trailhead Lodge was part of the Wildhorse Meadows master planned community.  Wildhorse Meadows' marketing materials advertised that Trailhead Lodge was part of the master planned community.

Trailhead LLC decided to hire S&P to market Trailhead Lodge.  *Pearson Affidavit* [#125-2], ¶¶ 36 - 37.  In March 2007, approximately four months before RP deeded the Trailhead Parcel to Trailhead LLC, S&P prepared a marketing plan at Trailhead LLC's expense.  *Id.*, ¶ 38.  Trailhead LLC tried to negotiate a separate marketing agreement with S&P, but was unable to do so.  *Id.*, ¶¶ 39-40.  Trailhead LLC then asked RP to enter into a project agreement with S&P concerning the Trailhead development.  *Id.*  RP and S&P entered into a project agreement concerning S&P's listing and marketing of units in the Trailhead Lodge project.  *Defendants Exhibit 4* [#125-6], pp. 68 - 97 (Trailhead Lodge Project Agreement).  RP entered into this project agreement with the intention to assign the Trailhead project agreement to Trailhead LLC.  *Pearson Affidavit* [#125-2], ¶¶ 40 - 41.

The Listing Agreement between RP and S&P permitted RP to assign any of its rights and obligations under the Listing Agreement "to any person or entity with the prior written consent of S&P," which consent shall not be withheld unreasonably.  *Listing Agreement* [#124-3], ¶ 14.12.  In July 2007, RP and Trailhead entered into a Partial Assignment and Assumption Agreement (Assignment).  *Pearson Affidavit* [#125-2], ¶ 41; *Defendants Exhibit 4* [#125-6], pp. 1 -2 (Assignment).  The Assignment specified an effective date of April 15, 2007.   Via the Assignment, RP assigned to Trailhead LLC all

of RP's right, title, and interest in the Trailhead Lodge Project Agreement. *Id.* S&P

consented to the assignment. *Id.*, ¶ D.  The exact date of the Assignment is not

indicated in the assignment or in Brent Pearson's affidavit.

### F.  PLAINTIFFS' CONTRACTS WITH TRAILHEAD

On July 25, 2007, plaintiffs William Dalzell and Devon Purdy , SAM Properties V,

LLC (SAM), Gregory and Pamela Haller (Hallers), Cindy Rogers (Rogers) and Ronald

Kolligian (Kolligian) each entered into substantially-identical purchase and sale

agreements (Contracts) with Trailhead LLC.  The plaintiffs each agreed to purchase of a

condominium unit in Trailhead Lodge.  The plaintiffs paid the following deposits toward

the purchase of their respective Trailhead units: Dalzell/Purdy - $119,000; SAM

Properties - $226,000; the Hallers - $155,000; Rogers - $86,000; Kolligian - $196,000.

*Stipulated Facts* [#124], ¶ 34; *Affidavit of Cynthia Rogers In Support of Plaintiffs' Brief*

[#124-16], ¶ 29; *Affidavit of Stephen R. Martin II* [#124-15], ¶¶ 12, 14, 30.  Trailhead has

not returned the deposits to the plaintiffs.  Brent Pearson signed the Contracts on behalf

of Trailhead.  RP was not a signatory to the Contracts.

Section 2 of the Contract states that the Trailhead Lodge condominium units are

part of a master planned common interest community known as Wildhorse Meadows to

be developed by the master developer, RP.  Section 6.b of the Contract states that by

virtue of ownership of the condominium units, the plaintiffs would become members of

(I) Trailhead Lodge at Wildhorse Meadows Owners Association, Inc. (Trailhead Lodge

HOA) and (ii) the Master HOA. As owners, the plaintiffs would be subject to the rules

and regulations of, including the payment of dues to, the Trailhead Lodge HOA and the

Master HOA.

Section 11.I of the Contract discusses amenities. Section 11.i(i)-(ii) states that,

under an agreement between Trailhead and RP, Trailhead was responsible for

constructing the "shell" of an indoor workout facility and RP was responsible for finishing

the workout facility. Section 11.1(ii) states that RP was responsible for constructing an

outdoor pool facility and a public gondola.  Section 11.i.(iv) states that the amenities,

including the workout facility and pool facilities, would be available to all owners of units

and lots within the master planned community by virtue of such owners' membership in

the Master HOA.

Neither RP nor Trailhead filed a statement of record with the Department of

Housing and Urban Development for Trailhead Lodge as required by the ILSA.  The

plaintiffs did not receive a property report as required by the ILSA.  The Contracts did

not advise the plaintiffs that if a property report was not furnished, the plaintiffs could

revoke their Contracts within two years of the date of signing.  Plaintiffs Dalzell/Purdy,

the Hallers, and Kolligian sent notices of intent to rescind their Contracts before July 25,

2009, the date two years after the plaintiffs signed the Contracts.  Trailhead scheduled

the closing for Ms. Rogers' purchase of unit 2108 for July 30, 2009. Ms. Rogers did not

appear at the closing.  Trailhead scheduled the closing for SAM's purchase of unit 2101

for June 10, 2009. SAM did not appear at the closing.  Ms. Rogers and SAM's attempts

to revoke their contracts are discussed below.

 G.  DAY-TO-DAY OPERATION & CONTROL OF RP & TRAILHEAD LLC

Plaintiff Devon Dalzell was an employee of S&P from August 2006 through

March 2008. *Devon Dalzell Affidavit* [#124-13], ¶ 1.   As marketing coordinator, Ms.

Dalzell's duties were to advertise and market Wildhorse Meadows and the individual

components of the development plan. *Id.*, ¶ 5.  Ms. Dalzell reports that coordinated

marketing and sales techniques were used for Wildhorse Meadows and each of the

parcels within Wildhorse Meadows.  *Id.*, ¶¶ 6-14.  When working on marketing, advertising, and selling Wildhorse Meadows, including The Range and Trailhead Lodge, Ms. Dalzell dealt with Brent Pearson, David Hill, and Mariana Ishida as representatives of S&P's client.  *Id.*, ¶ 23.  Ms. Dalzell says these three people had the authority to approve sales and marketing for all of Wildhorse Meadows, including Trailhead Lodge, and to negotiate the terms of purchase agreements with individual buyers.  *Id.*, ¶¶ 24-25.

S&P received a commission for the sale of each property within Wildhorse Meadows.  *Id.*, ¶ 28.  Ms. Dalzell says that, "(t)o her knowledge, the commission was paid by the same client, . . . regardless of whether we were selling The Range or Trailhead Lodge."  *Id.*  This is contrary to the statement of Brent Pearson, which indicates that Trailhead LLC paid all of the marketing, advertising, and broker fees related to Trailhead Lodge.  *Pearson Affidavit*, ¶ 48.  I conclude that, on this issue, Brent Pearson's statement is more credible.  In his affidavits, Brent Pearson demonstrates that he was in a better position to know this discrete fact.  On the other hand, Ms. Dalzell does not demonstrate in her affidavit that she was in a position to know specifically the source of commission payments for particular sales on particular projects.  Thus, I find that Trailhead LLC paid all of the marketing, advertising, and broker fees related to Trailhead Lodge.

Plaintiff Pamela Haller and her husband agreed to purchase a Trailhead Lodge condominium. *Plaintiff's' Exhibit 2* [#124-14] (Pamela Haller Affidavit), ¶ 7.  As the Trailhead Lodge project was being built, the Hallers became concerned about a variety of issues related to the project. *Id.*, ¶ ¶ 8-15.  The Hallers then made efforts to terminate their purchase contract. *Id.*, ¶ 17- 21.  Ms. Haller says RP and Trailhead LLC "always

appeared to be acting through the same individuals and speaking with one voice." *Id.*, ¶ 24. The Haller's concerns about Wildhorse Meadows and Trailhead Lodge were discussed with Brent Pearson, Mariana Ishida, and three other individuals. *Id.* When attempting to negotiate a termination of their contract, the Hallers dealt primarily with Brent Pearson and, to a lesser extent, Mariana Ishida. *Id.*, ¶¶ 18-21. "They appeared to us to speak for both [RP] and [Trailhead LLC] since it was all represented and marketed to be part of a single large development, Wildhorse Meadows. *Id.*

Similarly, Steven Martin, a managing member of plaintiff SAM, describes his dealings with the sales team for Wildhorse Meadows in the course of agreeing to buy a Trailhead Lodge condominium. " We considered the individuals that we were dealing with to be the developers of the Wildhorse Meadows project, which encompassed Trailhead Lodge. They talked as if they were responsible for all aspects of the development project we were purchasing." *Plaintiffs' Exhibit 3*, ¶ 15.

> In deciding to purchase a Trailhead unit in Wildhorse Meadows, our interactions were with the sales team, Mariana Ishida and Brent Pearson. No one referenced that Trailhead Lodge was an entity that had no ties to the development of Wildhorse Meadows. To the contrary, the development was even called Trailhead Lodge at Wildhorse Meadows. All of the amenities were tied and they were marketed together by the same people.

*Id.*

To rehearse, Brent Pearson, David Hill, and Mariana Ishida, as principals or employees of Resort Ventures, had authority to oversee and implement strategies and decisions made by RP and by Trailhead LLC. *Second Pearson Affidavit* [#130-2], ¶ 6. With that authority, its is easy to see how Ms. Dalzell, Ms. Haller, and Mr. Martin, among others, perceived that Brent Pearson, David Hill, and Mariana Ishida had broad authority to deal with issues concerning both Wildhorse Meadows generally and

Trailhead Lodge specifically.  As principals and employees of Resort Ventures, the management company designated by both RP and Trailhead, Brent Pearson, David Hill, and Mariana Ishida generally had such broad authority.

### H.  RP'S SALES OF OTHER PARCELS

In December 2006, RP sold a Parcel in Wildhorse Meadows to The Range at Wildhorse Meadows, LLC (the "Range LLC") for the development of 41 single-family home sites.  The Range LLC is a wholly-owned subsidiary of RP.  In June 2008, RP sold a Parcel to First Tracks at Wildhorse Meadows, LLC ("First Tracks LLC"), for the development of affordable housing units.  First Tracks LLC is a wholly-owned subsidiary of RP.  RP, Trailhead LLC, and First Tracks have the same business address: 610 Marketplace Plaza, Suite 210, Steamboat Springs, Colorado.

### I.  PLAINTIFFS' REVOCATIONS UNDER § 1703(c)

Under § 1703(c), a buyer is entitled to revoke a purchase contract within two years of the contract date when the property report required by the ILSA is not provided to the buyer.  It is stipulated that plaintiffs William Dalzell, Devon Purdy, Gregory and Pamela Haller, and Ronald Kolligian each provided to Trailhead LLC written notice of the revocation of their contracts less than two years after they signed their contracts with Trailhead LLC.  It is stipulated that plaintiff Cindy Rogers sent a revocation notice to Trailhead LLC on December 28, 2009, more than two years after she signed her contract with Trailhead LLC.

Stephen Martin is a managing member of plaintiff SAM Properties V, LLC (SAM).  Mr. Martin says he provided notice of the revocation of SAM's contract on July 3, 2009.  Mr. Martin says he gave this notice orally to Mariana Ishida, an employee of Resort Ventures, during a meeting between Mr. Martin and Ms. Ishida on July 3, 2009.

*Plaintiffs' Exhibit 3* (Martin Affidavit) [#124-15], ¶ 18.  A short time later, Ms. Ishida

contacted Mr. Martin to arrange a conference call to discuss SAM's concerns.  *Id.*, ¶ 19.

According to Mr. Martin, SAM was required to sign a confidentiality agreement with

Trailhead LLC before the conference call.  *Id.*, ¶ 19.  A July 6, 2009, e-mail from Ms.

Ishida to Mr. Martin includes a "discussions agreement" and offers to arrange a

conference call.  *Plaintiffs' Exhibit 24* [#124-31].  On July 10, 2007, Mr. Martin, his

partner, Mr. Altman, Ms. Ishida, and Brent Pearson participated in a conference call.

*Martin Affidavit* [#124-15], ¶ 19.  Mr. Martin says Ms. Ishida and Mr. Pearson offered

certain concessions in an attempt to persuade SAM to close on their purchase of a

Trailhead Lodge unit.  *Id.*  At the same time, Ms. Ishida and Mr. Pearson said if a

resolution was not reached, the developers would file suit against SAM for specific

performance.  *Id.*, ¶ 20.

　　　Ms. Ishida says in her affidavit that she met with Mr. Martin on July 3, 2009, and

Mr. Martin expressed concerns about the performance of the Trailhead Lodge project

and about SAM's ability to close under its contract with Trailhead LLC.  *Defendants'*

*Attachment F* [#130-4] (Ishida Affidavit), ¶ 2.  According to Ms. Ishida, following this

meeting, the parties had "ongoing negotiations regarding various concessions and

compromises to be made by Trailhead."  *Id.*, ¶ 3.  On October 30, 2009, Ms. Ishida sent

an e-mail to SAM.  There, Ms. Ishida said: "For the first time, Seller is willing to make a

counterproposal aimed at resolving this matter that does not involved SAM Properties

V, LLC closing on the purchase of a unit."  *Plaintiffs' Exhibit 26* [#124-32].  Ms. Ishida

says she does not recall any express revocation or rescission of the contract by Mr.

Martin or any other representative of SAM prior to July 25, 2009.  *Id.*, ¶ 4.  July 25,

2009, is the date precisely two years after the date of SAM's contract with Trailhead

LLC.

The evidence summarized above indicates a series of negotiations to change the terms of the contract, rather than a revocation of the contract in July 2007.  In addition, I note that some of the plaintiffs allege in the complaint that they validly revoked their contracts within two years of signing the contract.  *Complaint* [#70], ¶ 55.   However, SAM does not allege that it revoked its contract with Trailhead LLC in July 2009. Rather, SAM alleges that it was not aware of its right to revoke prior to the two year anniversary of its contract.  *Id.*  Similarly, in the **Final Pre Trial Order** [#117], SAM does not indicate that it revoked its contract in a timely fashion.  Given the evidence and the state of the operative pleadings and papers, I find and conclude that plaintiff SAM has not proven by a preponderance of the evidence that it revoked its contract with Trailhead LLC within two years of the date of the contract.

J.  EFFECT OF FAILURE TO NOTIFY PLAINTIFFS OF REVOCATION RIGHTS

In her affidavit, Ms. Rogers says she would have revoked her contract within two years of the contract date if the contract had contained language stating that she had the right up to July 25, 2009, to revoke her contract.  *Plaintiffs' Exhibit 4* (Rogers Affidavit) [#124-16], ¶¶ 25, 28.  In his affidavit, Mr. Martin says SAM "would have provided a formal, written notice of rescission" of its contract had SAM been notified in the contract that SAM had a right to revoke the contract.  *Martin Affidavit* [#124-15], ¶ 29.  Both Ms. Rogers and Mr. Martin describe circumstances indicating clearly that, prior to July 25, 2009, both Ms. Rogers and SAM wished not to complete the condominium purchase to which they agreed in their contracts.  Given the totality of the circumstances described in the Rogers and Martin affidavits, my other findings of fact, and the lack of evidence to the contrary, I find that both Ms. Rogers and SAM would

have revoked their contracts under § 1703(c) had their contracts contained language

indicating that they had the right to revoke their contracts under the circumstances that

existed at that time.  These revocations would have occurred prior to July 25, 2009.

## IV.  CONCLUSIONS OF LAW
## LIABILITY OF RP STEAMBOAT SPRINGS

15 U.S.C. 1703(a)(1)(A) and (B), part of the ILSA, is the foundation for the

plaintiffs' first and second claims for relief against RP.  As relevant to this case,

§ 1703(a)(1) provides:

(a) Prohibited activities

It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails–

(1) with respect to the sale or lease of any lot not exempt under section 1702 of this title–

(A) to sell or lease any lot unless a statement of record with respect to such lot is in effect in accordance with section 1706 of this title;

(B) to sell or lease any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee;

It is undisputed that neither Trailhead nor RP filed a statement of record as required by

§§ 1704 - 1706.  Similarly, neither Trailhead nor RP provided the plaintiffs with a

property report as required by § 1707 before the plaintiffs signed the Contracts.  Given

these violations of § 1703(a), the revocation rights and contract term requirements of

§ 1703(b) - (e) are triggered.

According to the plaintiffs, RP is liable for these failures under the ILSA because

RP sold Trailhead units to the plaintiffs indirectly.  Contrastingly, RP argues that the

evidence does not demonstrate that RP is an indirect seller.  If RP is not an indirect seller, then RP is not liable under the ILSA.

In applying the ILSA to the facts of this case, I apply the following rule of construction.  The purpose of the ILSA is to prohibit fraud and to protect purchasers of land that is part of a common promotional scheme.  *Olsen v. Lake Country, Inc.*, 955 F.2d 203, 205 (4th Cir. 1991).  The act should be construed flexibly to effectuate its remedial purposes.  *McCown v. Heidler*, 527 F.2d 204, 207 (10th Cir. 1975).  Of course, flexible interpretation does not permit a court effectively to add provisions to or delete provisions from the ILSA.

## A.  RP IS A DEVELOPER

Under § 1701(5), a developer is defined as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision."  Further definitions in § 1701 flesh out other requirements relevant to a determination of what entities are developers. RP satisfies these requirements.  RP does not dispute that it is a developer as defined in § 1701(5).  *Defendants' Response Brief* [#130], p. 1.  However, RP's status as a developer does not, by itself, expose RP to liability for the ILSA violations at issue here.  Rather, under § 1703, RP is liable only if RP sold to a plaintiff, directly or indirectly, any lot regulated by the ILSA without complying with the requirements of the ILSA.

## B.  RP'S SALE OF LOTS TO OTHER BUYERS

The plaintiffs argue that RP's sale of parcels to The Range at Wildhorse Meadows, LLC, to First Tracks at Wildhorse Meadows, LLC, and to Trailhead LLC all were subject to the requirements of the ILSA and that RP violated the ILSA in these transactions.  The plaintiffs seek to base their claims on these purported violations.

The stipulated facts indicate that each of these three sales were sales of parcels by RP to entities who acquired the parcels for the purpose of constructing residential buildings on those parcels.  Under 15 U.S.C. § 1702(a)(7), such sales are exempt from the ILSA.  Even if the ILSA applied to these transactions and was violated in these transactions, the plaintiffs could not base their claims on violations in transactions that did not involve one or more of the plaintiffs.  15 U.S.C. § 1709(a).  Thus, RP's sales to The Range at Wildhorse Meadows, LLC, First Tracks at Wildhorse Meadows, LLC, and Trailhead Lodge at Wildhorse Meadows, LLC cannot be the basis for the plaintiffs' ILSA claims against RP.

## C.  INDIRECT SELLER LIABILITY

Even though RP did not sell the condos directly to the plaintiffs, the plaintiffs contend RP is liable under § 1703 because RP is a developer who sold Trailhead condos to the plaintiffs indirectly.  Section 1703(a) subjects indirect sellers to liability for violations of the ILSA.  The plaintiffs contend that RP is an indirect seller because RP exercised significant control over the creation of the Trailhead Lodge portion of the Wildhorse Meadows development, significant control over the marketing of the Trailhead Lodge condos, and significant control over the terms on which those condos were listed for sale and were sold.  RP's exercise of this control, the plaintiffs contend, makes RP an indirect seller under § 1703.  In response, RP contends it is not an indirect seller.

Both the plaintiffs and RP cite three primary cases to provide a definition of an indirect seller for purposes of § 1703.  In ***Bartholomew v. Northampton Nat. Bank of Easton, Easton, Pa.***, the Third Circuit held that the term "indirect seller," as used in the ILSA

> can only be constituted as encompassing those who conduct their selling efforts through means other than direct, face-to-face contact with buyers, as, for example, through agents. There is no indication in the language of the statute or in the legislative history of the Act that an indirect seller is other than one who is involved in some manner in the selling efforts related to a land development project.

584 F.2d 1288, 1293 (3d Cir. 1978).  Addressing a motion to dismiss, the ***Bartholomew*** circuit court concluded that certain defendants did not fall within the definition of an indirect seller because the plaintiffs did not allege that these defendants "sold, offered to sell, or advertised to sell any lots in Sherwood Forest.  Nor have they alleged that these defendants performed any of these activities through agents or other means."  *Id*.

In ***Hammar v. Cost Control Marketing and Sales Management of Virginia, Inc.***, the district court addressed the indirect seller issue in the context of a motion for summary judgment by a defendant referred to as CCM.  757 F.Supp. 698, 703 (W.D. Va. 1990).  The ***Hammar*** court noted and relied on the analysis in ***Bartholomew***.  The plaintiffs in ***Hammar*** presented two documents to support their contention that CCM, a defendant, was an indirect seller under the ILSA.   First, the plaintiffs presented a memo on CCM stationery from a CCM official and addressed to "'members of the board, all sales tracts and all department heads.'"  *Id*. at 705.  The memo notified the addressees of the appointment of a new executive vice-president in charge of "all sales sites in Virginia."  *Id*.  The second document, also on CCM stationery, detailed several new sales procedures to be followed by each sales site in Virginia.  *Id*.  Both documents were sent to CCM's Virginia offices.  The sales in question concerned property in Virginia.  The ***Hammar*** court found that these documents showed CCM was involved in the effort to sell the lots in question and concluded these documents were sufficient to support the conclusion that CCM was an indirect seller.  *Id*. at 705.  Because CCM

presented contrary evidence, the court concluded that there was a genuine issue of material fact on this point. *Id.*[4]

In ***Hester v. Hidden Valley Lakes, Inc.***, two individual defendants argued they were not indirect sellers for the purpose of the ILSA.  495 F. Supp. 48, 54 (N.D. Miss. 1980).  Hidden Valley Lakes, Inc. was the direct seller of the properties in question. One of the individual defendants signed the property reports required by the ILSA, and the other individual defendant signed the statement of record required by the ILSA. One individual defendant employed and supervised sales personnel who worked for Hidden Valley Lakes, Inc.   The ***Hester*** court concluded that both individual defendants had sufficient control over the employees of the developer, Hidden Valley Lakes, Inc., to determine how the property reports were distributed to buyers.    Based on these facts, the court determined that the individual defendants were indirect sellers for the purpose of the ILSA.  "Even if they did not directly sell any of the lots in the subdivision, they had sufficient control over the salesmen and sales policy of the corporation to be considered indirect sellers." *Id*. at 54.

These cases and others cited by the parties establish a key principle.  The essential quality of an indirect seller under § 1703(a) is a significant level of control over the sale of the lots at issue.  Control over sales personnel and sales policy can be sufficient, control over creation and distribution of documents required by the ILSA can be sufficient, control over an agent who sells the lots can be sufficient.  Here, the evidence in the record does not support the conclusion that RP had a significant level of

---

[4]   The ***Hammar*** court analyzed also the liability of a commercial bank under the ILSA when the bank allows its name to be used in advertisements for a development and thus lends "its prestige and good name to the sales effort."  757 F. Supp. at 702-703.  I find this analysis to be of little relevance to the present case because it is *sui juris* to commercial banks, and it is not tied to the key issue under the ILSA, and alleged indirect seller's level of control over the selling effort.

control over the sale of Trailhead Lodge condominiums to the plaintiffs or any other Trailhead buyers.

RP had a substantial role in the creation of the Wildhorse Meadows development.  That role included designation of the Trailhead Parcel as a parcel to be used for a condominium development.  That role included a plan to develop and construct amenities, such as an indoor exercise facility, to be shared by Trailhead residents and residents of other developments in Wildhorse Meadows.  In addition, RP, through S&P, promoted Wildhorse Meadows through advertisements, a website, and other means.  On some occasions, the Wildhorse Meadows promotional materials included descriptions of the Trailhead Lodge condominium project.  RP's role in designing and developing Wildhorse Meadows, however, does not constitute an exercise of control over the sale of Trailhead condominiums.  The fact that RP created a large development of which Trailhead was one part does not demonstrate significant control over Trailhead LLC's sales of Trailhead condominiums.  The fact that RP promoted Wildhorse Meadows, and sometimes discussed Trailhead Lodge as part of this effort, does not demonstrate significant control over Trailhead LLC's sales of Trailhead condominiums.

RP executed the Listing Agreement with S&P, and the Listing Agreement defines and specifies many of the details of the sale of residential units in Wildhorse Meadows.  Under the terms of the Listing Agreement, Trailhead LLC was not required to use S&P for marketing and brokerage services for Trailhead Lodge once Trailhead LLC began to promote and develop Trailhead Lodge.  In the end, Trailhead chose to use S&P, and was able to do so only via an assignment from RP.  According to the plaintiffs, these facts show RP's control of the sale of Trailhead units.  I disagree.  RP did not require

Trailhead LLC to use S&P.  Rather, in the Listing Agreement, RP preserved the option

to assign to other developers a project agreement with S&P.  This gave developers who

purchased a parcel from RP the option of using S&P.  Trailhead LLC chose to pursue

that option.  RP's preservation of that option does not amount to a significant level of

control over the sale of Trailhead units to the plaintiffs.

The plaintiffs rely also on the fact that many Trailhead buyers, including some of

the plaintiffs, dealt directly with Brent Pearson, David Hill, and/or Mariana Ishida when

addressing concerns about Wildhorse Meadows and concerns about their contracts with

Trailhead LLC.  In some cases, Brent Pearson was the point man for Trailhead LLC as

some of the plaintiffs sought to terminate their purchase contracts or renegotiate their

contracts.  The plaintiffs note also that Brent Pearson and David Hill appeared to

exercise authority for Trailhead LLC and for RP when addressing issues about

Trailhead Lodge and issues about Wildhorse Meadows.  These facts, the plaintiffs

contend, show that RP, through Brent Pearson, David Hill, and others, exercised

significant control over Trailhead LLC's sales to the plaintiffs.

There is no significant dispute about the level of authority exercised by Brent

Pearson and David Hill with regard to RP and Trailhead.  However, this exercise of

authority does not demonstrate that RP exercised significant control over Trailhead

LLC's selling efforts and sales.  Rather, the evidence shows that Brent Pearson and

David Hill both were principals of Resort Ventures, the management company hired by

both RP and Trailhead LLC.  Trailhead LLC and RP had separate management

agreements with Resort Ventures.  Under these agreements, Brent Pearson, David Hill,

and others, as principals or employees of Resort Ventures, were authorized to oversee

and implement strategies and decisions made by RP and by Trailhead LLC.  *Second*

*Affidavit of Brent Pearson* [#130-2] (Second Pearson Affidavit), ¶ 6.  Resort Ventures did not have the authority to set sales strategy or pricing for RP or Trailhead LLC.  *Id.* There is no evidence that, via the two management agreements or otherwise, RP was granted any significant level of control over Trailhead LLC's sales of condominiums in Trailhead Lodge, or that RP actually exercised any such control.

It must be noted that each of the plaintiffs executed their contracts with Trailhead LLC on July 25, 2007.  RP signed the deed transferring the Trailhead Parcel to Trailhead LLC on July 27, 2007.  When the plaintiffs' contracts were executed, RP still held title to the Trailhead Parcel.  This fact, however, does not show that RP exercised control over Trailhead LLC's selling efforts.

In sum, RP's role in creating, developing, and promoting the Wildhorse Meadows development does not demonstrate that RP had or exercised any significant level of control over Trailhead LLC's sales of Trailhead Lodge condominiums to the plaintiffs or to others.  RP's role in establishing the Listing Agreement with S&P, and in assigning the S&P Project Agreement to Trailhead LLC, does not demonstrate that RP had or exercised any significant level of control over Trailhead LLC's sales of Trailhead Lodge condominiums to the plaintiffs or to others.  The fact that Brent Pearson, David Hill, and others exercised significant authority on behalf of RP and Trailhead LLC, based on separate management agreements with Resort Ventures, does not demonstrate that RP had or exercised any significant level of control over Trailhead LLC's sales of Trailhead Lodge condominiums to the plaintiffs or to others.  Considered separately or together, these circumstances do not demonstrate that RP had a significant level of control over the sale of Trailhead Lodge condominiums.

### D.  CONTROL PERSON LIABILITY

In a separate section of their brief, the plaintiffs argue that the same group controlled RP and Trailhead Lodge LLC.  *Plaintiffs' Opening Brief* [#124], pp. 11-14. This argument is a different approach to showing that RP is an indirect seller because it exercised a significant level of control over sales by Trailhead LLC.

In *McCown v. Heidler*, the United States Court of Appeals for the Tenth Circuit held that officers and directors of a corporate developer may be subject to liability under the ILSA.  527 F.2d 204, 207 (10th Cir. 1975) (directors and officers who participate with a corporation or its 'selling agents' in fraud in violation of the [ILSA] are guilty of aiding and abetting).  The *McCown* court drew an analogy to control person liability under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10(b)(5) of the Securities and Exchange Commission, 17 C.F.R. § 240.10b.  *Id*. (knowing assistance of or participation in a fraudulent scheme gives rise to liability equal to that of the perpetrators themselves).

According to the plaintiffs, the "same group controls RP and Trailhead with the authority to act for either entity on any phase of the Wildhorse Meadows subdivision." *Plaintiffs' Opening Brief* [#124], p. 14.  The plaintiffs note that RP, Trailhead LLC, and related entities share the same address and phone number.  After the Trailhead Parcel was sold to Trailhead LLC, RP continued its role as master developer of Wildhorse Meadows, including its obligation to construct amenities for Wildhorse Meadows residents.  The plaintiffs note, again, the authority exercised by Brent Pearson and David Hill, as described above.  In addition, the plaintiffs argue, the control groups of RP and Trailhead are financially intertwined.  This relationship, the plaintiffs claim, shows that the same group controls RP and Trailhead.

The key question is whether RP controlled Trailhead LLC's sales of Trailhead

Lodge condominiums.  The structure of the entities in question, RP, Trailhead LLC, and Resort Ventures, as shown in Defendants' Exhibit 1 [#125-3], does not demonstrate that RP controlled Trailhead LLC's sales efforts.  Brent Pearson, David Hill, and Whitney Ward each hold some ownership interest in each of these three entities.  However, the evidence shows that the majority stake in both RP and Trailhead was held by others and that management control of RP and Trailhead LLC ultimately was held by their majority owners.  Of course, both RP and Trailhead LLC granted broad management authority to Resort Ventures, and Resort Ventures often acted through Brent Pearson and David Hill.  However, as discussed above, RP's grant of authority to Resort Ventures and Trailhead LLC's separate grant of authority to Resort Ventures do not demonstrate that RP was granted any significant level of control over Trailhead LLC's sales of condominiums in Trailhead Lodge or that RP actually exercised any such control.  Viewed from the control person perspective in *McCown*, the evidence in the record does not demonstrate that RP is an indirect seller under § 1703.

## E.  CONCLUSION

RP's sale of parcels to The Range at Wildhorse Meadows, LLC, to First Tracks at Wildhorse Meadows, LLC, and to Trailhead LLC are exempt from the ILSA and may not be a basis for liability in this case.  The evidence in this case does not establish by a preponderance of the evidence that RP is an indirect seller, as that term is used in     § 1703.  As a result, RP is not liable under the ILSA for violations of the ILSA by Trailhead LLC.

## V.  CONCLUSIONS OF LAW
### REMEDIES AVAILABLE TO SAM PROPERTIES AND CINDY ROGERS

Trailhead LLC did not provide any of the plaintiffs with a property report.  As a

result, the plaintiffs each had a right to revoke their contract under § 1703(c), which

provides:

> In the case of any contract or agreement for the sale or lease of a lot for
> which a property report is required by this chapter and the property report
> has not been given to the purchaser or lessee in advance of his or her
> signing such contract or agreement, such contract or agreement may be
> revoked at the option of the purchaser or lessee within two years from the
> date of such signing, and such contract or agreement shall clearly provide
> this right.

It is stipulated that plaintiffs William Dalzell, Devon Purdy, Gregory and Pamela

Haller, and Ronald Kolligian each revoked their contracts with Trailhead LLC within two

years of the contract date.  The parties have stipulated to the entry of judgment for

specific damage amounts as to each of these plaintiffs.  *Stipulation* [#121].

It is stipulated further that plaintiff Cindy Rogers sent a revocation notice to

Trailhead LLC on December 28, 2009, more than two years after she signed her

contract with Trailhead LLC.  Cindy Rogers' revocation is not effective because it was

not delivered within the time period specified in § 1703(c).

SAM Properties V, LLC (SAM) did not timely revoke its contract with Trailhead

LLC.  Both SAM and Ms. Rogers seek relief against Trailhead LLC for Trailhead LLC's

violation of the ILSA.  However, the parties disagree about the relief available to SAM

and Ms. Rogers under the ILSA.

In their first claim for relief, SAM and Ms. Rogers allege that Trailhead LLC

violated the ILSA because Trailhead LLC failed to file a statement of record as required

by § 1703(a)(1)(A), failed to provide a property report as required by § 1703(a)((1)(B),

and failed to include certain language in the contracts as required by § 1703(b), (c) and,

(d).  Subsections (b), (c) and, (d) of § 1703 require any contract subject to the ILSA to

contain language clearly providing for the rights of contract revocation provided in those

subsections.  SAM and Ms. Rogers' contracts did not contain this required language.

On this basis, SAM and Ms. Rogers seek rescission of their contracts and damages.

## A.  RELIEF UNDER § 1709(a)

Under § 1709(a), a plaintiff may bring an action in law or equity based on a

violation of § 1703(a).  As relevant to this case, § 1703(a) prohibits sales without filing a

statement of record and delivering a property report to the buyer.   In a suit under §

1709(a), "the court may order damages, specific performance, or such other relief as

the court deems fair, just, and equitable."   In their brief, SAM and Ms. Rogers present

only a few sentences of argument concerning damages under § 1709(a).  *Plaintiffs'*

*Opening Brief* [#124], pp. 18-19.  Likely, this is so because there is little evidence that

any damages suffered by SAM or Ms. Rogers were caused by Trailhead LLC's failure to

comply with the requirements of § 1703(a).  Thus, I conclude that SAM and Ms. Rogers

are not entitled to damages under § 1709(a).

## B.  EFFECT OF FAILURE TO REVOKE WITHIN TWO YEARS

In this case, the relevant revocation right is that provided in § 1703(c).  SAM and

Ms. Rogers were not provided with a property report, but they did not revoke their

contracts within the two year period.  Section 1711(b) provides a statute of limitations

for actions to enforce § 1703(c).  Such actions must be brought within three years after

the contract is singed.  There is no dispute that the plaintiffs' complaint was filed within

three years of the date of their contracts.

SAM and Ms. Rogers argue that the two year revocation period of § 1703(c)

must be extended when the seller fails to include in the contract language providing for

the revocation right specified in § 1703(c).  I disagree.  Nothing in this section or

elsewhere in the ILSA indicates that the two year revocation period is extended in some

way when the contract in question did not provide for the right to revoke the contract. *Venezia v. 12th & Division Properties, LLC*, 679 F. Supp. 2d 842, 847 (M.D. Tenn 2009). The statutory unconditional right to rescind once held by SAM and Ms. Rogers no longer is viable because SAM and Ms. Rogers did not exercise that right on or before July 25, 2009.

## B.  DAMAGES UNDER § 1709(b)

Under § 1709(b), a plaintiff may bring an action in law or equity "to enforce any right under subsection (b), (c), (d), or (e) of section 1703 of this title."  Unlike § 1709(a), § 1709(b) does not specify any type of relief available under that subsection, except "to enforce" the specified subsections.  Trailhead LLC argues that relief under § 1709(b) is limited to enforcement of a revocation that was exercised within the time limits stated in § 1703 (b)(c), or (d).[5]  According to Trailhead LLC, § 1709(b)does not authorize an action for damages based on Trailhead LLC's failure to include in the contract clear terms providing for a revocation right, consistent with § 1703(c).  I disagree.

Section 1703(c) includes two basic requirements.  First, the section gives the buyer a two year window to revoke a purchase contract if the seller fails to provide the required property report to the buyer.[6]  Second, the section requires that the revocation option be provided in the contract via clear language.  I will refer to the second requirement as the contract terms requirement.  Section 1709(b) permits a buyer to

---

[5]  The **Final Pre Trial Order** [#117] refers to a statute of limitations defense raised by the defendants.  The defendants' argument about the effect of SAM and Ms. Roger's failure to revoke their contracts in a timely fashion is the issue categorized in the **Final Pre Trial Order** [#117] as a statute of limitations argument .  *Final Pre Trial Order* [#117], p. 7.

[6]  The revocation right created in § 1703(c) is not contingent on a showing that the buyer suffered any harm as a result of the seller's failure to provide a property report.  Rather, the sole requirement for exercise of the revocation right is a showing that the seller failed  to provide a property report.  *Venezia v. 12th & Division Properties, LLC*, 679 F. Supp. 2d 842, 847 (M.D. Tenn 2009).

bring "an action at law or in equity . . . to enforce *any* right" under § 1703(c).  15 U.S.C. § 1709(b) (emphasis added).  The contract terms requirement of § 1703(c) is one of the two basic requirements, or rights, provided in § 1703(c).  That right is enforceable in a civil suit under § 1709(b).[7]

In addition, if the contract terms requirement were not subject to enforcement under § 1709(b), then the requirement would be reduced to an aspiration.  Sellers could omit the required contract terms from their contracts and, as a result, some buyers would be unaware of their contract revocation right.  Unaware, some buyers would lose that right after two years and have no remedy for the seller's failure to comply with the contract terms requirement. Section 1703(c) requires certain contract terms, and § 1709(b) makes that requirement enforceable through an action for damages.  ***See Venezia v 12th & Div. Properties, LLC***, 685 F.Supp.2d 752, 763 (M.D. Tenn. 2010); ***Murray v. Holiday Isle, LLC***, 620 F.Supp.2d 1302, 1313 (S.D. Alabama 2009).

In the context of the facts of this case, the contract terms requirement can be enforced by requiring Trailhead LLC to pay to SAM and Ms. Rogers any damages they suffered that were caused by Trailhead LLC's violation of the contract terms requirement.  Had Trailhead LLC complied with the contract terms requirement, and had SAM and Ms. Rogers revoked their contracts, SAM and Ms. Rogers would have been entitled to a refund by Trailhead LLC of all money paid by SAM and Ms. Rogers under the contract.  15 U.S.C. § 1703(e).  The evidence in the record establishes by a preponderance that Trailhead LLC's failure to comply with the contract terms provision

---

[7]  The defendants interpret the word "seller," as used in § 1709(b), to include direct sellers but not indirect sellers.  *Defendants' Response Brief* [#130], p. 16.  Based on that interpretation, the defendants present a strained interpretation of § 1709(b), which construction precludes an action for damages under § 1709(b).  I reject the defendants' limited definition of the word "seller" as used in § 1709(b) and the defendants' interpretation of § 1709(b) as precluding an action for damages.

caused SAM and Ms. Rogers to lose both their statutory right to revoke and their statutory right to recover the amounts they paid to Trailhead LLC under the terms of their contract.  Thus, SAM and Ms. Rogers are entitled to recover those amounts as damages caused by Trailhead LLC's violation of the contract terms requirement of § 1703(c).  In addition, under § 1709(c), they are entitled to "interest, court costs, and reasonable amounts for attorneys' fees, independent appraisers' fees, and travel to and from the lot."

C.  EQUITABLE RELIEF UNDER § 1709(b)

Section 1709(b) authorizes an action "at law or in equity" to enforce, *inter alia*, § 1709(c).  In the context of a contractual dispute, one long-standing equitable remedy is rescission of the contract.  Nothing in § 1709(b) limits the equitable remedies available under that subsection.  Thus, I find that rescission is an equitable remedy available under § 1709(b).

If equitable rescission is a remedy available under § 1709(b), then the parties agree that SAM and Ms. Rogers must establish materiality as a key element of a claim for equitable rescission.  In the context of a claim under the ILSA, one court defined the elements of an equitable rescission claim as (i) the ILSA was violated; (ii) the violations were material; and (iii) rescission would restore the parties to the status quo, or the equities of the situation demand rescission.  *Plant v. Merrifield Town Center Ltd. Partnership*, 711 F.Supp.2d 576, 592 (E.D. Va. 2010).

The defendants argue that materiality in the present context is an objective concept.  A representation or omission is objectively material if a reasonable person in the plaintiff's position would view the representation or omission as having altered significantly the total mix of information relevant to that person.  *See TSC Indus., Inc. v.*

31

***Northway, Inc.***, 426 U.S. 438, 450 (1976) (materiality in the context of securities fraud). In the context of a violation of § 1703(c), I conclude that materiality is a subjective concept. If a seller fails to provide a buyer with a property report, then § 1703(c) permits the buyer to revoke the contract at the buyer's sole discretion. The ILSA does not require the buyer to have a good reason to revoke or any reason to revoke. The revocation right created in § 1703(c) is not contingent on a showing that the buyer suffered harm as a result of the seller's failure to provide a property report. Rather, the sole requirement for exercise of the revocation right is a showing that the seller failed to provide a property report. ***Venezia v. 12th & Division Properties, LLC***, 679 F. Supp. 2d 842, 847 (M.D. Tenn 2009). Because the buyer has an unconditional right to revoke in this context, the materiality of the ILSA violation must be judged subjectively from the point of view of the plaintiff whose claim is at issue.

Both SAM and Ms. Rogers have stated unequivocally and cogently that they would have revoked their contracts within two years of the contract date had their contracts contained the revocation terms required by § 1703(c). The record contains no contrary evidence. These uncontroverted statements prove that the omission of the revocation terms required by § 1703(c) was material to both SAM and Ms. Rogers.

SAM and Ms. Rogers have established the elements of a claim for equitable rescission. The ILSA was violated, and the violation was material to both SAM and Ms. Rogers. Had Trailhead LLC not violated the ILSA, SAM and Ms. Rogers would have revoked their contracts, they no longer would be obligated under their contracts, and they would be entitled under § 1703(e) to repayment of the amounts they paid to Trailhead LLC. Rescission of SAM and Ms. Rogers' contracts will return them to the positions they would have occupied had Trailhead LLC not violated the ILSA. I

conclude that both SAM and Ms. Rogers are entitled to equitable rescission of their contracts, including repayment by Trailhead LLC of the amounts paid to Trailhead LLC by these two plaintiffs.

## VI.  THIRD CLAIM FOR RELIEF & COUNTERCLAIM

The plaintiffs' third claim for relief is a claim by plaintiffs William Dalzell, Devon C. Purdy, Gregory and Pamela Haller, and Ronald Kolligian seeking a judgment declaring that their revocations of their contracts with Trailhead LLC are valid.  By stipulation, these plaintiffs and Trailhead LLC have stipulated to the entry of judgment against Trailhead LLC on this claim.  To the extent such a declaration is relevant to RP, these plaintiffs are entitled to a declaration that their contract revocations are valid.

Trailhead LLC asserts a counterclaim for breach of contract against SAM and Ms. Rogers.  Trailhead LLC asserts, in essence, that SAM and Ms. Rogers did not revoke their contracts, are obligated to perform under the contracts, and have failed to perform.  As a result, Trailhead LLC seeks damages for breach of contract against both SAM and Ms. Rogers.  However, I have found and concluded that both SAM and Ms. Rogers are entitled to equitable rescission of their contracts.  Thus, Trailhead LLC cannot establish a valid claim for breach of contract.  Judgment shall enter in favor of SAM and Ms. Rogers on Trailhead LLC's counterclaim for breach of contract.

## VII.  CONCLUSION

In an order [#103] addressing previous motions for summary judgment, I concluded that the Contracts are not exempt from the requirements of the ILSA.  *Order Granting Motions for Summary Judgment* [#103] field November 30, 2010.  In addition, I concluded that Trailhead LLC is liable to the plaintiffs on their first, second, and third

claims for relief under the ILSA.

Subsequently, plaintiffs William Dalzell, Devon C. Purdy, Gregory and Pamela Haller, and Ronald Kolligian stipulated with defendant Trailhead LLC to the entry of judgment against Trailhead LLC on the plaintiffs first, second, and third claims for relief. *Stipulation* [#121].  In the stipulation, these parties agreed to the entry of judgment for specific amounts of damages as to each of these plaintiffs as well as a judgment requiring the rescission of the relevant contracts. Judgment shall enter based on this stipulation.

I have made findings of fact based on the parties' stipulated facts.  I have made additional findings of fact after examining the evidence and arguments submitted by the parties.  All findings of fact are based on my conclusion that those facts have been proven by a preponderance of the evidence.  Based on the facts that I have found, I conclude as a matter of law that defendant RP Steamboat Springs LLC is not an indirect seller under the ILSA.  As a result, RP is not liable to any of the plaintiffs on their claims under the ILSA.  Instead, RP is entitled to judgment on the plaintiffs' first, second, and third claims for relief.

Plaintiffs SAM and Ms. Rogers are entitled to judgment in their favor against Trailhead LLC on the first and second claims for relief.  As discussed in this order, this judgment must include equitable rescission of their contracts with Trailhead LLC and an award of damages.

Plaintiffs SAM and Ms. Rogers do not seek relief vis-á-vis  the third claim for relief.  Rather, the third claim for relief concerns only the validity of the contract revocations of the other plaintiffs.  Thus, judgment on the third claim for relief need not enter as to plaintiffs SAM and Ms. Rogers.

Because plaintiffs SAM and Ms. Rogers are entitled to rescission of their contracts, as a matter of law, Trailhead LLC cannot prove facts necessary to establish its counterclaim for breach of contract.  Thus, judgment shall enter in favor of SAM and Ms. Rogers on Trailhead LLC's counterclaim for breach of contract.

## VIII.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That under FED. R. CIV. P. 58, and based on the above findings of fact and conclusions of law, **JUDGMENT SHALL ENTER** in favor of defendant RP Steamboat Springs LLC, against each of the plaintiffs, William I Dalzell, Devon Purdy, SAM Properties V, LLC, Gregory Haller, Pamela Haller, Cindy Rogers, and Ronald Kolligian, on the plaintiffs' first, second, and third claims for relief as stated in the plaintiffs' **Second Amended Complaint** [#70] filed July 26, 2010;

2. That under FED. R. CIV. P. 58, and based on the stipulation [#121] of the parties,  **JUDGMENT SHALL ENTER** in favor of plaintiffs William I Dalzell, Devon Purdy, Gregory Haller, Pamela Haller, and Ronald Kolligian, against defendant Trailhead Lodge at Wildhorse Meadows, LLC, on the plaintiffs' first claim for relief;

3. That under FED. R. CIV. P. 58, and based on the above findings of fact and conclusions of law, **JUDGMENT SHALL ENTER** in favor plaintiff SAM Properties V, LLC and Cindy Rogers, against defendant Trailhead Lodge at Wildhorse Meadows, LLC, on the plaintiffs' first claim for relief;

4. That under FED. R. CIV. P. 58, and based on the stipulation [#121] of the parties, **JUDGMENT SHALL ENTER** in favor plaintiffs William I. Dalzell and Devon C. Purdy, jointly, against defendant Trailhead Lodge at Wildhorse Meadows LLC, for $119,000.00, the amount of the deposit paid by William I. Dalzell and Devon C. Purdy;

5.  That under FED. R. CIV. P. 58, and based on the stipulation [#121] of the parties, **JUDGMENT SHALL ENTER** in favor plaintiffs Gregory Haller and Pamela Haller, jointly, against defendant Trailhead Lodge at Wildhorse Meadows, LLC, for $155,000.00, the amount of the deposit paid by Gregory Haller and Pamela Haller;

6.  That under FED. R. CIV. P. 58, and based on the stipulation [#121] of the parties, **JUDGMENT SHALL ENTER** in favor plaintiff Ronald Kolligian against defendant Trailhead Lodge at Wildhorse Meadows, LLC, for $196,000.00, the amount of the deposit paid by Ronald Kolligian;

7.  That under FED. R. CIV. P. 58, and based on the above findings of fact and conclusions of law, **JUDGMENT SHALL ENTER** in favor plaintiff SAM Properties V, LLC against defendant Trailhead Lodge at Wildhorse Meadows, LLC, for $226,000.00, the amount of the deposit paid by SAM Properties V, LLC;

8.  That under FED. R. CIV. P. 58, and based on the above findings of fact and conclusions of law, **JUDGMENT SHALL ENTER** in favor plaintiff Cindy Rogers against defendant Trailhead Lodge at Wildhorse Meadows, LLC, for $86,000.00, the amount of the deposit paid by Cindy Rogers;

9.  That under FED. R. CIV. P. 58, and based on the above findings of fact and conclusions of law, **JUDGMENT SHALL ENTER** in favor plaintiff SAM Properties V, LLC against defendant Trailhead Lodge at Wildhorse Meadows, LLC, rescinding the purchase agreement between SAM Properties V, LLC and defendant Trailhead Lodge at Wildhorse Meadows, LLC;

10.  That under FED. R. CIV. P. 58, and based on the above findings of fact and conclusions of law, **JUDGMENT SHALL ENTER** in favor plaintiff Cindy Rogers against defendant Trailhead Lodge at Wildhorse Meadows, LLC, rescinding the purchase

agreement between Cindy Rogers and defendant Trailhead Lodge at Wildhorse Meadows, LLC;

11.  That under FED. R. CIV. P. 58, and based on the stipulation [#121] of the parties,  **JUDGMENT SHALL ENTER** in favor of plaintiffs William I Dalzell, Devon Purdy, Gregory Haller, Pamela Haller, and Ronald Kolligian, against defendant Trailhead Lodge at Wildhorse Meadows, LLC, on the plaintiffs' second claim for relief;

12.  That under FED. R. CIV. P. 58, and based on the above findings of fact and conclusions of law,  **JUDGMENT SHALL ENTER** in favor of plaintiffs SAM Properties V, LLC and Cindy Rogers against defendant Trailhead Lodge at Wildhorse Meadows, LLC, on the plaintiffs' second claim for relief;

13.  That under FED. R. CIV. P. 58 and 28 U.S.C. § 2201, **JUDGMENT SHALL ENTER** on the plaintiffs' second claim for relief declaring that defendant Trailhead Lodge at Wildhorse Meadows, LLC is subject to and violated the Interstate Land Sales Full Disclosure Act when it failed to comply with the requirements of 15 U.S.C. § 1703(a)(1)(A) and (B) and 15 U.S.C. § 1703 (b),(c),(d), and (e) in the course of entering into and performing under its sales contracts with plaintiffs;

14.  That under FED. R. CIV. P. 58, and based on the stipulation [#121] of the parties,  **JUDGMENT SHALL ENTER** in favor of plaintiffs William I Dalzell, Devon Purdy, Gregory Haller, Pamela Haller, and Ronald Kolligian, against defendants RP Steamboat Springs LLC and Trailhead Lodge at Wildhorse Meadows, LLC, on the plaintiffs' third claim for relief;

15.  That under FED. R. CIV. P. 58 and 28 U.S.C. § 2201, **JUDGMENT SHALL ENTER** on the plaintiffs' third claim for relief declaring that plaintiffs William I Dalzell, Devon Purdy, Gregory Haller, Pamela Haller, and Ronald Kolligian each properly

revoked their contracts with defendant Trailhead Lodge at Wildhorse Meadows, LLC, under 15 U.S.C. § 1703;

16.   That **NO JUDGMENT SHALL ENTER** on the plaintiffs' third claim for relief as to plaintiffs SAM Properties V, LLC and Cindy Rogers because these two plaintiffs do not seek relief in the third claim for relief;

17.   That under FED. R. CIV. P. 58, and based on the above findings of fact and conclusions of law,  **JUDGMENT SHALL ENTER** in favor of plaintiffs SAM Properties V, LLC and Cindy Rogers against defendant Trailhead Lodge at Wildhorse Meadows, LLC on the counterclaim of defendant Trailhead Lodge at Wildhorse Meadows, LLC;

18.   That under FED. R. CIV. P. 58, and based on the stipulation [#121] of the parties,  **JUDGMENT SHALL ENTER** in favor of plaintiffs William I Dalzell, Devon Purdy, Gregory Haller, Pamela Haller, and Ronald Kolligian against defendant Trailhead Lodge at Wildhorse Meadows, LLC, providing that these plaintiffs are entitled to prejudgment interest on the damages due to them in the amount of eight (8) percent per annum calculated from July 25, 2007, and to post-judgment interest in the amount of eight (8) percent per annum calculated from the date of the entry of judgment;

19.   That the plaintiffs each are **AWARDED** their costs as to defendant Trailhead Lodge at Wildhorse Meadows, LLC, which costs shall be taxed by the clerk of the court under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR. 54.1;

20.   That defendant RP Steamboat Springs LLC is **AWARDED** its costs, which costs shall be taxed by the clerk of the court under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR. 54.1;

21.   That any motion seeking an award of attorney fees or additional elements of damages not addressed in this order, as provided in 15 U.S.C. § 1709(b), **SHALL BE**

**FILED** on or before February 8, 2013, and the filing of any response and reply shall be

filed in the time and manner required by D.C.COLO.LCivR 7.1C.

Dated January 4, 2013, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge